## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------- x
                                                        :
In re                                                   :    Chapter 11
                                                        :
TOWN SPORTS INTERNATIONAL, LLC,[1] :                         Case No. 20-12168 (CTG)
                                                        :
                 Debtor.                                :
                                                        :
------------------------------------------------------- x
                                                        :
KENNEDY LEWIS PARTNERS MASTER                           :
FUND LP and KENNEDY LEWIS                               :
PARTNERS MASTER FUND II LP,                             :
                                                        :
                 Plaintiffs,                            :
                                                        :
v.                                                      :    Adv. Pro. No. 22-50406 (CTG)
                                                        :
ABRY PARTNERS, LLC, APEX CREDIT                         :
PARTNERS, LLC, CIFC ASSET                               :
MANAGEMENT LLC, ELLINGTON                               :
MANAGEMENT GROUP, L.L.C.,                               :
TRIMARAN ADVISORS MANAGEMENT,                           :
L.L.C., and WILMINGTON SAVINGS                          :
FUND SOCIETY, FSB,                                      :
                                                        :
                 Defendants.                            :
                                                        :
------------------------------------------------------- x
```

## NOTICE OF APPEAL

**PLEASE TAKE NOTICE** that, pursuant to 28 U.S.C. § 158 and Rule 8003 of the Federal

Rules of Bankruptcy Procedure, plaintiffs Kennedy Lewis Partners Master Fund LP and Kennedy

---

[1] The last four digits of Town Sports International, LLC's federal tax identification number are 7365. The mailing address for Town Sports International, LLC is 399 Executive Boulevard, Elmsford, New York 10523. In addition to the foregoing Debtor, the "Debtors" include certain affiliated entities, a complete list of which, including the last four digits of their federal tax identification numbers and addresses, may be obtained on the website of the Debtors' claims and noticing agent at http://dm.epiq11.com/TownSports. All motions, contested matters, and adversary proceedings that remained open as of the closing of such cases, or that are opened after the date thereof, are administered in the remaining chapter 11 case of Town Sports International, LLC, Case No. 20-12168 (CSS).

Lewis Partners Master Fund II LP, hereby appeal from this Court's Judgment (Adv. Dkt. No. 43, attached as **Exhibit A**) and this Court's Memorandum Opinion (Adv. Dkt. No. 42, attached as **Exhibit B**), each entered in the above-captioned adversary proceeding on January 6, 2023, inclusive of any and all decisions and orders subsidiary thereto and subsumed therein.

**PLEASE TAKE FURTHER NOTICE** that the names of all parties to the decisions appealed from and the names, addresses, and telephone numbers of their attorneys are as follows:

| Plaintiffs – Appellants | |
| --- | --- |
| Kennedy Lewis Partners Master Fund LP and Kennedy Lewis Partners Master Fund II LP | **BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**<br><br>Gregory Werkheiser (DE Bar No. 3553)<br>Jennifer Hoover (DE Bar No. 5111)<br>1313 North Market Street, Ste. 1201 Wilmington, DE 19801<br>Telephone: (302) 442-7010<br>Email: gwerkheiser@beneschlaw.com<br>          jhoover@beneschlaw.com<br><br>**MCKOOL SMITH, P.C.**<br><br>Kyle A. Lonergan (pro hac vice)<br>James H. Smith (pro hac vice)<br>One Manhattan West, 50th Floor<br>395 9th Avenue<br>New York, NY 10001<br>Telephone: (212) 402-9400<br>Email: klonergan@mckoolsmith.com<br>          jsmith@mckoolsmith.com<br><br>John Sparacino (pro hac vice)<br>600 Travis St # 7000<br>Houston, TX 77002<br>Telephone: (713) 485-7300<br>Email: jsparacino@mckoolsmith.com |

| Defendants – Appellees | |
|---|---|
| Abry Partners, LLC; Apex Credit Partners, LLC; CIFC Assert Management Group, L.L.C.; Trimaran Advisors Management, L.L.C. | **PACHULSKI STANG ZIEHL & JONES LLP**<br><br>Laura Davis Jones (DE Bar No. 2436)<br>James E. O'Neill (DE Bar No. 4042)<br>919 North Market Street, 17th Floor<br>P.O. Box 8705<br>Wilmington, DE 19899-8705 (Courier 19801)<br>Telephone: (302) 652-4100<br>Email: ljones@pszjlaw.com<br>      joneill@pszjlaw.com<br><br>**GIBSON DUNN & CRUTCHER**<br><br>Mary Beth Maloney (pro hac vice)<br>David Salant (pro hac vice)<br>200 Park Avenue<br>New York, NY 10166-0193<br>Telephone: 212.351.4000<br>Email: mmaloney@gibsondunn.com<br>      dsalant@gibsondunn.com |
| Wilmington Savings Fund Society, FSB | **ASHBY & GEDDES, P.A.**<br><br>Ricardo Palacio (DE Bar No. 3765)<br>500 Delaware Avenue<br>Wilmington, DE 19899<br>Telephone: (302) 654-1888<br>Email: RPalacio@ashbygeddes.com<br><br>**FRESHFIELDS BRUCKHAUS DERINGER US LLP**<br><br>Madlyn Gleich Primoff (pro hac vice)<br>Peter Kim (pro hac vice)<br>601 Lexington Ave., 31st Floor<br>New York, NY 10022<br>Telephone: (212) 277-4000<br>Email: madlyn.primoff@freshfields.com<br>      peter.kim@freshfields.com |

*[Remainder of page intentionally left blank]*

Dated: January 19, 2023
       Wilmington, Delaware

**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**

*/s/ Gregory W. Werkheiser*
Gregory Werkheiser (DE Bar No. 3553)
Jennifer Hoover (DE Bar No. 5111)
1313 North Market Street, Ste. 1201
Wilmington, DE 19801
Telephone: (302) 442-7010
Email: gwerkheiser@beneschlaw.com
       jhoover@beneschlaw.com

-and-

**McKool Smith, P.C.**
Kyle A. Lonergan (admitted *pro hac vice*)
James H. Smith (admitted *pro hac vice*)
One Manhattan West, 50th Floor
395 9th Avenue
New York, NY 10001
Telephone: (212) 402-9400
Email: klonergan@mckoolsmith.com
       jsmith@mckoolsmith.com

John Sparacino (admitted *pro hac vice*)
600 Travis St # 7000
Houston, TX 77002
Telephone: (713) 485-7300
Email: jsparacino@mckoolsmith.com

*Counsel for Plaintiff – Appellants Kennedy Lewis Partners Master Fund LP and Kennedy Lewis Partners Master Fund II LP*

# EXHIBIT A

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>TOWN SPORTS INTERNATIONAL, LLC, *et al.*,<br><br>　　　　Debtors. | Chapter 11<br><br>Case No. 20-12168 (CTG)<br><br>(Jointly Administered) |
| KENNEDY LEWIS PARTNERS MASTER FUND LP and KENNEDY LEWIS PARTNERS MASTER FUND II LP,<br><br>　　　　Plaintiffs,<br><br>　　　　v.<br><br>ABRY PARTNERS, LLC, *et al.,*<br><br>　　　　Defendants. | Adv. Pro. No. 22-50406 (CTG) |

## **JUDGMENT**

This action came before the Court, on motions to dismiss and, with the consent of the parties, deemed cross-motions for summary judgment on a deemed count for declaratory judgment, and subsequent pleadings, and the issues having been duly considered and a decision having been duly rendered,

It is Ordered and Adjudged that counts I, II, and III of the Complaint are dismissed for lack of subject-matter jurisdiction.

On the deemed count IV, which seeks a declaration that this Court's prior orders do not preclude the assertion of the breach of contract counts, the plaintiffs' motion for summary judgment is denied and the defendants' motions for summary judgment are granted.  Judgment on this count is thus entered in favor of defendants.

Dated: January 6, 2023

_____

CRAIG T. GOLDBLATT
UNITED STATES BANKRUPTCY JUDGE

# Notice Recipients

District/Off: 0311−1      User: admin      Date Created: 1/6/2023

Case: 22−50406−CTG      Form ID: pdfjo      Total: 17

**Recipients of Notice of Electronic Filing:**

| | | |
|---|---|---|
| aty | Gregory W. Werkheiser | gwerkheiser@beneschlaw.com |
| aty | Jennifer R. Hoover | jhoover@beneschlaw.com |
| aty | John J. Sparacino | jsparacino@mckoolsmith.com |
| aty | John Loren Olsen | jolsen@wsfsbank.com |
| aty | Juan E Martinez | jmartinez@beneschlaw.com |
| aty | Laura Davis Jones | ljones@pszjlaw.com |
| aty | Ricardo Palacio, Esq | bankruptcy@ashby−geddes.com |

TOTAL: 7

**Recipients submitted to the BNC (Bankruptcy Noticing Center):**

| | | |
|---|---|---|
| aty | David Philip Salant | Gibson, Dunn & Crutcher LLP   200 Park Avenue   New York, NY 10166 |
| aty | Eric Avery Brandon | Freshfields Bruckhaus Deringer US LLP   601 Lexington Avenue   New York, NY 100199710 |
| aty | James Hartmann Smith | McKool Smith, P.C.   395 9th Avenue   50th Floor   New York, NY 10001−8603 |
| aty | Kyle A. Lonergan | McKool Smith   One Manhattan West   395 9th Avenue   50th Floor   New York, NY 10001−8603 |
| aty | Kyle A. Lonergan | McKool Smith, P.C.   One Manhattan West   395 9th Avenue   50th Floor   New York, NY 10001−8603 |
| aty | Madlyn Gleich Primoff | Freshfields Bruckhaus Deringer US LLP   601 Lexington Avenue   31st Floor   New York, NY 100199710 |
| aty | Mary Beth Maloney | Gibson, Dunn & Crutcher LLP   200 Park Avenue   New York, NY 10166−0193 |
| aty | Peter Kim | Freshfields Bruckhaus Deringer US LLP   601 Lexington Avenue   31st Floor   New York, NY 10019 |
| ust | U.S. Trustee | Office of the United States Trustee   J. Caleb Boggs Federal Building   844 King Street, Suite 2207   Lockbox 35   Wilmington, DE 19801 |
| ust | U.S. Trustee | Office of United States Trustee   J. Caleb Boggs Federal Building   844 King Street, Suite 2207   Lockbox 35   Wilmington, DE 19899−0035 |

TOTAL: 10

# EXHIBIT   B

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TOWN SPORTS INTERNATIONAL, LLC, *et al.*,<br><br>     Debtors. | Chapter 11<br><br>Case No. 20-12168 (CTG)<br><br>(Jointly Administered) |
| KENNEDY LEWIS PARTNERS MASTER FUND LP and KENNEDY LEWIS PARTNERS MASTER FUND II LP,<br><br>     Plaintiffs,<br><br>     v.<br><br>ABRY PARTNERS, LLC, *et al.*,<br><br>     Defendants. | Adv. Pro. No. 22-50406 (CTG) |

## MEMORANDUM OPINION

This adversary proceeding is, at bottom, an effort to fit the square peg of a breach of contract action into the round hole of disputes over prior orders of this Court. That effort has given rise to understandable confusion over whether the breach of contract claims are within this Court's subject-matter jurisdiction.

In the end, the Court concludes that the best reading of the complaint is that it asserts ordinary claims for breach of contract. While the events underlying the alleged breaches occurred in the bankruptcy case and were affected by prior orders of this Court, these circumstances are insufficient to turn this case for breach of contract into a matter that either "arises in" a bankruptcy case or "arises under" the

Bankruptcy Code. Nor is the case within the Court's "related to" jurisdiction. The Court will accordingly dismiss the contract claims, as it must, for want of subject-matter jurisdiction.

All of the parties made clear, however, that they are anxious for a resolution of their disputes on the merits – at least to the extent this Court has the authority to provide it. Appreciating the possibility that the Court would conclude it lacked subject-matter jurisdiction over the contract claims, the Court offered to the parties, if (and only if) they all consented to it, to "deem" the complaint to include a fourth count – one seeking a declaration that the state-law claims for breach of contract pled in the complaint are not precluded by this Court's prior orders. That was the issue to which the parties devoted most of their briefing. And there is no doubt that the Court has subject-matter jurisdiction to adjudicate a claim regarding the meaning of its own prior orders. The parties expressly consented to having the Court proceed on that basis, and, further, to treat the existing briefing as cross motions for summary judgment on that fourth count.

On the merits, the Court concludes that the breach of contract claims the plaintiffs seek to bring *are* precluded by this Court's prior orders. The gist of the breach of contract claims is that the majority lenders and agent bank authorized a credit bid without the majority lenders giving an appropriate instruction to the agent. The Court concludes, however, that a fair reading of the Court's November 2020 ruling denying the lenders' motion for a preliminary injunction was that the Court already concluded, when it entered the order approving the sale, that such an

instruction *had* been given.  It is true that neither the Court's order nor the transcript of the November 2020 hearing contains precisely those words.  But this Court finds, exercising the discretion it has to construe its prior orders, that this is the only fair and reasonable way to construe what the Court previously decided.

This question was fully litigated in connection with the November 2020 motion for a preliminary injunction, which was a dispute to which the plaintiffs in the current action were parties.  And while the denial of a preliminary injunction is not a "final judgment" in the traditional sense, the Restatement of Judgments recognizes that principles of finality are to be flexibly applied in the context of the doctrine of issue preclusion.  Applying the factors identified by the Restatement, the Court concludes that the order denying the preliminary injunction is entitled to issue preclusive effect. The Court will accordingly grant summary judgment in defendants' favor on the "deemed" fourth count of the complaint.

### Factual and Procedural Background

1.    Town Sports International owned and operated health and fitness clubs in the Northeast and Mid-Atlantic areas.[1]  Unsurprisingly, its business was hit hard

---

[1] Debtor Town Sports International, LLC, which is not a party to this adversary proceeding, is referred to as "Town Sports International."  The factual background set forth herein, as it bears on the motions to dismiss, is taken from the allegations of the complaint, originally filed in the U.S. District Court for the Southern District of New York, *Kennedy Lewis Partners Master Fund LP v. Abry Partners,* No. 21-04690 (S.D.N.Y. May 25, 2021), which is referred to as the Complaint.  Other pleadings filed on the docket of the U.S. District Court for the Southern District of New York in this litigation are cited as "New York D.I.__."  Various of the operative documents have been filed on this Court's docket as exhibits to declarations. For convenience, citations to those documents point to the versions filed on this Court's docket.  In addition, as discussed further below at p. 29, the Court also takes judicial notice of this Court's prior orders in connection with the summary judgment motion on the "deemed" count for a declaratory judgment.

by the pandemic.[2]  The health and fitness clubs were forced to close in March 2020.[3]
These bankruptcy cases were filed in September 2020.[4]

      This lawsuit was originally filed as a breach of contract action in the U.S.
District Court for the Southern District of New York.[5]  The plaintiffs were lenders
under a credit agreement and related security agreement who held a minority of the
debt issuance.[6]  The defendants in this action are (a) other lenders under the same
credit and security agreements who collectively held a majority of the debt issuance,[7]
and (b) Wilmington Savings Fund Society, which was the administrative agent under
the credit agreement and collateral agent under the security agreement.[8]

      2.     In 2013, the lenders entered into a credit agreement that made $340
million in credit available to Town Sports International, which borrowing would

---

[2] Complaint ¶ 2.

[3] *Id.*

[4] *In re Town Sports International, LLC*, No. 20-12168 (Bankr. D. Del. Sept. 14, 2020).
Citations to materials filed on the docket in these bankruptcy cases are cited as "Main Case
D.I. __."

[5] *See* Complaint.

[6] Plaintiffs Kennedy Lewis Partners Master Fund LP and Kennedy Lewis Partners Master
Fund II LP are referred to as the "minority lenders."

[7] These defendants, Abry Partners, LLC; Apex Credit Partners, LLC; CIFC Asset
Management LLC; Ellington Management Group, L.L.C.; and Trimaran Advisors
Management, L.L.C. are referred to as the "lender defendants."  These lender defendants also
made up the Ad Hoc Term Lender Group in the main bankruptcy case.  Plaintiffs and the
lender defendants are referred to collectively as the "lenders."

[8] Wilmington Savings Fund Society, FSB is referred to as "WSFS" or the "agent defendant."

mature in 2020.[9]  The related security agreement granted a lien on substantially all of Town Sports International's assets to secure its promise to repay the loan.[10]

The mechanics of the credit agreement are similar to what one would see in a typical syndicated loan agreement.  WSFS serves as the agent, whose role is to "interface between the borrower and the lenders, and among the lenders themselves."[11]  Section 12.10(a) of the credit agreement provides that the majority of the lenders (at times referred to as the "Required Lenders") in accordance with the terms of the agreement will bind all of the lenders.[12]  And the security agreement likewise provides that the collateral agent has the exclusive authority to enforce the security agreement and may act only upon the instructions of the "Required Secured Creditors," which is defined (by cross-reference to the credit agreement) as the holders of a majority of the outstanding debt.[13]

3.      The bankruptcy case proceeded swiftly to a sale of the debtors' assets. The debtors negotiated a sale of substantially all of the debtors' assets to a new entity that was to be owned in part by the syndicate lenders under the credit agreement and

---

[9] Complaint ¶ 26.

[10] D.I. 21-5 (Security Agreement).

[11] Lee M. Shaiman and Bridget K. Marsh, eds., *The Handbook of Loan Syndications and Trading* 256 (2d ed. 2022).  *See also Norton Creditors' Rights Handbook* § 2:25 (typically, in a syndicated loan, "one of the lenders will act as the agent for the loan and will have primary responsibility for administering the loan for the benefit of all the lenders.  The loan agreement will specify the rights and duties of the agent bank.  The agent bank will generally have responsibility for making advances to the debtor, collecting and distributing payments and communicating with the debtor."); D.I. 21-4 § 12 (setting forth role of administrative agent under the credit agreement).

[12] D.I. 21-4 § 12.10(a).

[13] D.I. 21-5 §§ 7.1, 9; D.I. 21-4 § 1.01.

in part by Tacit Capital, a private equity firm that was to capitalize the new entity with $47.5 million in cash.[14]  The lenders were to contribute $80 million of the $167 million outstanding under their loans to the new entity, which would use the $80 million in loans as a credit bid to acquire the debtors' assets.[15]

The debtors filed a motion to approve the sale (subject to an auction) on October 2, 2020, approximately two weeks after the case was filed.[16]  This Court approved the bid procedures by order dated October 9, 2020.[17]  That order set a deadline of October 26, 2020 for the receipt of any competing bids.[18]  Had the debtors received a qualifying competing offer, the auction was scheduled to occur on October 28, 2020.[19]  The sale hearing was to take place on November 3, 2020.[20]

On October 26, 2020, however, the debtors filed a notice on the docket indicating that they had not received any other qualifying offers.[21]  The auction was therefore cancelled.[22]  On November 4, 2020, the Court issued an order authorizing the sale to the buyer.[23]

---

[14] Complaint ¶ 6; Tacit Capital LLC is referred to as "Tacit Capital."  The proposed buyer was to be a newly formed entity named New TSI Holdings, Inc., and is referred to as "Buyer."

[15] Complaint ¶ 7.

[16] Main Case D.I. 160.

[17] Main Case D.I. 208.

[18] *Id.* ¶ 2.

[19] *Id.* ¶¶ 2, 6.

[20] *Id.* ¶ 2.

[21] Main Case D.I. 347.

[22] *Id.*

[23] Main Case D.I. 639.

On November 27, 2020, however, the ad hoc term lender group (the members of which are the lender defendants in this action) filed an emergency motion seeking injunctive relief.[24]  In their motion, they reported that after the Court's entry of the sale order it "became clear that Tacit would be unable to meet any of its funding commitments" to capitalize the buyer.[25]  The ad hoc term lender group took the position that it had neither contributed the $80 million of its debt, nor had it instructed the agent to transfer the right to credit bid, to the buyer and therefore the sale could not close.[26]  The debtors, however, argued in opposition to the emergency motion (filed two days later on November 29, 2020) that the sale order stated that the lenders had already contributed their $80 million of debt to the buyer.[27]  Accordingly, they contended that whether or not Tacit Capital had capitalized the buyer with the $47.5 million that the lenders had anticipated, the buyer was able to, and legally obligated to, close on the credit-bid sale with the debtors.[28]

This Court held a hearing on the preliminary injunction motion on November 30, 2020.[29]  The Court agreed with the debtors' construction of the sale order,

---

[24] Main Case D.I. 710.

[25] *Id.* ¶ 20.

[26] Main Case D.I. 710 ¶¶ 4, 16-20.

[27] Main Case D.I. 714 ¶¶ 3-4 ("The Prepetition Agent (as defined in the DIP Order), on behalf of the Prepetition Lenders, has the right under section 363(k) of the Bankruptcy Code and ***is authorized by this Court pursuant to the Bid Procedures Order and this Sale Order, to credit bid the Credit Bid Consideration.  Pursuant to the Asset Purchase Agreement, the Buyers agreed to provide***, as consideration for the Acquired Assets, the Purchase Price, which includes, among other things, ***the Credit Bid Consideration***.") (emphasis in debtors' objection) (quoting Main Case D.I. 639 (Sale Order) ¶ X).

[28] *Id.* ¶¶ 7-10.

[29] *See generally* Nov. 30, 2020 Hr'g Tr. on ad hoc lender group's emergency motion.

concluding that "the sale order makes it clear that the preliminaries, i.e. the transfer of the right to credit bid, have already occurred and we're not awaiting that happening."[30]  The Court added that the syndicate lenders' $80 million "was a fundamental part of the bid that was the stalking horse bid that went out for competing bids, the auction was canceled, [the] court had a sale hearing, nobody objected, nobody raised this issue, I entered an order, we're going to closing and now all of a sudden the term lenders say we never gave the authority for the buyer to credit bid, it's just too late."[31]

The Court added that "the documents made it clear that contribution already – and to the extent that it didn't already occur pursuant to some sort of the documents being exchanged among the parties I deem[] it as a matter of law and to the extent I have to exercise equitable power here [–] did occur."[32]  The Court accordingly entered an order denying the emergency motion, which included a statement that "the Prepetition Agent, on behalf of the Prepetition Lenders, has transferred the right to credit bid the Credit Bid Consideration to the Buyer, and the Buyer is authorized to contribute the Credit Bid Consideration at closing of the sale."[33]  On December 18,

---

[30] Nov. 30, 2020 Hr'g Tr. at 27.

[31] *Id.*

[32] *Id.*

[33] Main Case D.I. 721 at 2.

2020, this Court entered an order confirming the debtors' plan of reorganization.[34] That plan became effective on December 22, 2020.[35]

    4.    In May 2021, the minority lenders brought this lawsuit in the U.S. District Court for the Southern District of New York.[36]  The theory of the lawsuit is that the actions taken by the lender defendants and the agent defendant, in credit bidding the $80 million of debt, violated the terms of the applicable agreements.[37] The complaint asserts three claims for breach of contract against the defendants and seeks to recover monetary damages resulting from the alleged breaches.[38]  According to the facts as alleged in the complaint, there is not complete diversity between the plaintiffs and defendants.[39]  The only asserted basis for federal jurisdiction is that the action is "related to the Debtors' Chapter 11 proceeding," such that it would fall within the related-to jurisdiction of 28 U.S.C. § 1334(b).[40]

    Defendants moved the district court to dismiss the complaint or, in the alternative, to transfer this lawsuit to the District of Delaware.[41]  Those motions do not, however, challenge the district court's subject-matter jurisdiction over the

---

[34] Main Case D.I. 828.

[35] Main Case D.I. 849 at 1.

[36] *See* Complaint.

[37] Complaint ¶¶ 1-12.

[38] Complaint ¶¶ 47-53 (breach of § 12.10 of the credit agreement and § 7.1 of the security agreement by the lender defendants), 54-62 (breach of §§ 12.02 and 12.10 of the credit agreement and § 7.1 of the security agreement by the agent defendant), 63-69 (breach of § 13.12 of the credit agreement by all defendants), 70 (prayer for relief).

[39] Complaint ¶¶ 13-22.

[40] Complaint ¶ 21.

[41] *See* New York D.I. 47, 48, 50, 51.

action.[42]   The New York district court judge found that the case was within the bankruptcy court's "core" jurisdiction, because the claims within the complaint required the interpretation of a bankruptcy court order, "even though the contracts were made before the bankruptcy," and therefore the claims were "arising in" the bankruptcy case.[43]   The district court judge stated,

> [A] contract dispute can be core to bankruptcy proceedings depending on its nature, and [c]ourts have held contract disputes to be core where, similar to the situation here, although the contract preceded the bankruptcy, the dispute did not, and the dispute that emerged in the bankruptcy proceedings would not exist absent those proceedings and is intertwined with them.[44]

By order dated August 17, 2022, the district court granted the motions to transfer, directing that the case be transferred to the District of Delaware.[45]

The U.S. District Court for the District of Delaware docketed this proceeding on August 24, 2022.[46]   Because the complaint purports to invoke the district court's bankruptcy jurisdiction, by order dated September 6, 2022, the district court referred the proceeding, in accordance with 28 U.S.C. § 157(a) and the district court's standing order of reference, to this Court.[47]

---

[42] *Id.*

[43] New York District Court, Aug. 17, 2022 Hr'g Tr. at 8-11.

[44] New York District Court, Aug. 17, 2022 Hr'g Tr. at 10-11 (citing *Delaware Trust Co. v. Wilmington Trust N.A.*, 534 B.R. 500, 516 (S.D.N.Y. 2015)).

[45] New York D.I. 61.

[46] *Kennedy Lewis Partners Master Fund LP v. Abry Partners,* No. 22-0111 (MN) (D. Del. Aug. 24, 2022).   Citations to materials on the docket of the Delaware District Court case are hereafter cited as "Del. Dist. D.I. __."

[47] Del. Dist. D.I. 68; *see* Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated Feb. 29, 2012.

5. After the case was docketed in this Court, the parties filed supplemental briefing regarding the defendants' motions to dismiss the complaint.[48] On November 29, 2022, before the reply briefs were due and two weeks before oral argument, the Court set forth some preliminary observations on whether the action was within this Court's subject-matter jurisdiction.[49] The Court emphasized the Third Circuit's guidance that "federal courts have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party," because it "can never be forfeited or waived."[50]

Because this is a post-confirmation action, the Court explained that in order for the case to be within the "related-to" jurisdiction, there would need to be a "close nexus" between the action and the confirmed plan of reorganization.[51] The Court expressed some measure of doubt that such a nexus was present.[52] The Court also observed that the prepetition breach of contract claims did not seem to "arise in" the bankruptcy case because by their nature the breach of contract claims *could* arise outside of the bankruptcy context.[53] The Court therefore asked the parties to address the Court's subject-matter jurisdiction over this proceeding at the December 13, 2022

---

[48] D.I. 19, 20, 22.

[49] D.I. 26 ("In preparing for [the hearing on the motions to dismiss for December 13, 2022], however, it occurred to the Court that its subject-matter jurisdiction over this action was at least subject to doubt.").

[50] *Hartig Drug Company Inc. v. Senju Pharmaceutical Co. Ltd.*, 836 F.3d 261, 267 (3d Cir. 2016) (internal citation and quotation omitted).

[51] D.I. 26 at 7-8.

[52] *Id.*

[53] *Id.* at 8.

hearing.   The Court also permitted the parties to address these issues in supplemental briefs filed before the hearing.[54]

While pointing out that the Court was obligated to assure itself of its own subject-matter jurisdiction, the Court appreciated that the parties were anxious to obtain a resolution on the merits.[55]  The Court further observed, in its preliminary observations, that the parties' briefing on the motion to dismiss was principally directed to the effect of the Court's prior orders on the present action, and that whether or not the Court had subject-matter jurisdiction over the breach of contract lawsuit, the Court would certainly have jurisdiction to construe its prior orders.[56]  The Court accordingly offered the parties the option for it to "deem" the Complaint to include a fourth count, one for a declaratory judgment on the preclusive effect of this Court's prior orders.[57]

The parties took up the Court's invitation to submit additional briefing addressing the question of subject-matter jurisdiction[58]  The lender defendants argued that the Court has subject-matter jurisdiction over the lawsuit because it falls within 28 U.S.C. § 1334(b)'s "arising in" jurisdiction.[59]  "[B]ecause Plaintiffs' claims challenging the propriety and result of a bankruptcy sale order cannot exist without

---

[54] *Id.* at 9.

[55] *Id.* at 9-11.

[56] *Id.* at 10-11 (citing *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009)).

[57] *Id.* at 11.

[58] D.I. 29, 30, 31.

[59] D.I. 30.

that proceeding, and indeed call into question the final ruling and order of that proceeding," the lender defendants contended, the action falls within the arising-in jurisdiction.[60] The agent defendant asserted that the Court has subject-matter jurisdiction over the claims against the agent defendant "pursuant to paragraph 45 of the Court's November 4, 202[0] original sale order, which contains a broad retention of jurisdiction provision."[61] The plaintiffs essentially acknowledged that the Court lacked subject-matter jurisdiction, explaining that they believed that the case was within the "related-to" jurisdiction under Second Circuit law (where they filed the lawsuit), which they say does not apply the rigorous "close nexus" test to post-confirmation jurisdiction that is applicable here in the Third Circuit.[62] At the December 13, 2022 hearing, all of the parties expressly agreed that, if the Court were to conclude it lacked subject-matter jurisdiction over the three breach of contract claims, it should proceed to address the "deemed" fourth count for a declaratory judgment, treating the existing briefing as cross motions for summary judgment.[63]

### Jurisdiction

The circumstances of how this case was filed and referred to this Court are described above under point four of the Factual and Procedural Background. This Court's subject-matter jurisdiction over the breach of contract claims is described in

---

[60] D.I. 30 at 2, 3 ("Plaintiffs' theory of this case turns entirely on their interpretation of Judge Sontchi's sale orders, thus implicating the very sale process Judge Sontchi oversaw.").

[61] D.I. 29 at 1 (citing Main Case D.I. 639).

[62] D.I. 31 at 3-4; Dec. 13, 2022 Hr'g Tr. at 28.

[63] Dec. 13, 2022 Hr'g Tr. at 5.

Part I, and its subject-matter jurisdiction over the "deemed" fourth count for a declaratory judgment is described in Part II, below.

## Analysis

### I. This Court lacks subject-matter jurisdiction over the claims for breach of contract.

Bankruptcy jurisdiction "extends to four types of title 11 matters: (1) cases 'under' title 11; (2) proceedings 'arising under' title 11; (3) proceedings 'arising in' a case under title 11; and (4) proceedings 'related to' a case under title 11."[64] The first of those categories, a case "under" title 11, is the main bankruptcy case – the one initiated by the filing of the petition.[65] For a court to have subject-matter jurisdiction over other proceedings in bankruptcy, they must fit into one of the other three categories.[66] The Third Circuit's recent decision in *Essar Steel* described the scope of those categories:

> A case 'arises under' [the Bankruptcy Code] when the cause of action is based on a right or remedy expressly provided by the Bankruptcy Code. Proceedings 'arising in' a case under [the Bankruptcy Code] include matters that, though not explicitly mentioned in the Code, would not exist outside of bankruptcy. Related matters are generally causes of action under state law that are imported into the bankruptcy because of their impact on the size of the debtor's estate, and hence the distribution to the debtor's creditors.[67]

---

[64] *Stoe v. Flaherty*, 436 F.3d 209, 216 (3d Cir. 2006).

[65] *Id.*

[66] *Id.*

[67] *In re Essar Steel Minnesota LLC*, 47 F.4th 193, 197 (3d Cir. 2022) (quoting *In re Weiand Auto. Indus.*, 612 B.R. 824, 854 (Bankr. D. Del. 2020)) (brackets in original; internal footnote omitted).

As noted above and in this Court's preliminary observations, while no party has questioned this Court's subject-matter jurisdiction, it is clear that every federal court has an independent obligation to assure itself of its own subject-matter jurisdiction over a proceeding.[68]  The Third Circuit has explained that subject-matter jurisdiction is "non-waivable" and "must be policed by the courts on their own initiative, irrespective of whether that policing of jurisdictional authority is voiced."[69]

### A.     This case is not within the Court's related-to jurisdiction.

The original complaint for breach of contract, filed in the U.S. District Court for the Southern District of New York, asserted that the district court's subject-matter jurisdiction was satisfied because this lawsuit was "related to the Debtors' Chapter 11 proceeding" pursuant to 28 U.S.C. § 1334(b).[70]

While the related-to jurisdiction extends, before plan confirmation, to any dispute that might have a "conceivable effect" on the bankruptcy estate, upon confirmation related-to jurisdiction is significantly narrowed.  The Third Circuit explained in *Resorts*, "At the most literal level, it is impossible for the bankrupt debtor's estate to be affected by a post-confirmation dispute because the debtor's estate ceases to exist once confirmation has occurred."[71]  Accordingly, post-confirmation related-to jurisdiction requires a "close nexus" between the claim

---

[68] *Hartig*, 836 F.3d at 267.

[69] *Id.* (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999)).

[70] New York D.I. 1 ¶ 21.

[71] *In re Resorts International, Inc.*, 372 F.3d 154, 165 (3d Cir. 2004).

asserted and the confirmed plan.[72]  The jurisdiction thus extends to causes of action that "affect the interpretation, implementation, consummation, execution, or administration of the confirmed plan."[73]

No such nexus is present here.  While the confirmed plan states that it preserves jurisdiction over the debtors' post-effective causes of action, the debtors are not a party to this lawsuit.[74]

The lender defendants contend that "the resolution of this action could affect the post-confirmation administration of the Debtors, given the Lender Defendants' reservation of their right to claim indemnification from the Debtors under the governing credit agreement."[75]  While such a potential claim for indemnification may be sufficient to establish pre-confirmation related-to jurisdiction,[76] where the sole requirement is that the action have a conceivable effect on the bankruptcy estate, it

---

[72] *Resorts*, 372 F.3d at 166-167 ("[T]he essential inquiry appears to be whether there is a close nexus to the bankruptcy plan or proceeding sufficient to uphold bankruptcy court jurisdiction over the matter.").

[73] *Resorts*, 372 F.3d at 167.

[74] *See* Main Case D.I. 828 ("Schedule of Retained Causes of Action").

[75] D.I. 30 n.1 (citing Main Case D.I. 1180 (Sept. 21, 2021 reservation of rights) and *In re Seven Fields*, 505 F.3d 237, 265 (3d Cir. 2007)).

[76] *In re Philadelphia Newspapers, LLC*, 423 B.R. 98, 103 (Bankr. E.D. Pa. 2010) (holding that the impact of the proceeding on the debtors' estate and the debtors' indemnification practice established "related-to" jurisdiction); *see also In re LTL Mgmt., LLC*, 645 B.R. 59, 75-77 (Bankr. D.N.J. 2022) (finding "related-to" jurisdiction, pre-confirmation, to enjoin third-party action because of debtor's indemnification obligations); *but see In re W.R. Grace & Co.*, 591 F.3d 164, 174-175 (3d Cir. 2009) (holding that potential indemnification claim did not satisfy related-to jurisdiction, noting that "will or will not be sufficiently related to a bankruptcy to warrant the exercise of subject matter jurisdiction is a matter that must be developed on a fact-specific, case-by-case basis."); *In re Lower Bucks Hosp.*, 488 B.R. 303, 314 (E.D. Pa. 2013) ("The existence of an indemnification agreement between a defendant in a proceeding outside the bankruptcy action and a non-party bankrupt debtor does not automatically supply the nexus necessary for the exercise of 'related to' jurisdiction.").

is insufficient to meet *Resorts'* more stringent "close-nexus" test that governs post-confirmation related-to jurisdiction.[77]

### B. This action neither "arises in" the bankruptcy case nor "arises under" the Bankruptcy Code.

The dispute over "arising in" and "arising under" jurisdiction is ultimately a dispute over how to make sense of the plaintiffs' complaint. The defendants' position is that this lawsuit is, in substance, a dispute over what the Court did when it denied the motion for a preliminary injunction.[78] They argue that, on that basis, the claim is so inexorably tied to what happened in the bankruptcy case that it fits within the "arising in" jurisdiction.[79] As the lender defendants put it, "Plaintiffs' notion that *Judge Sontchi's order* caused Defendants to breach a contract would 'have no existence outside the bankruptcy case' because the cause of action accrued only as a consequence of the bankruptcy case."[80]

That assertion is incorrect. For the reasons described below, the Court concludes that the complaint asserts claims for breach of contract. To be sure, the *reason* the contract was allegedly breached has a great deal to do with this Court's prior orders. But that allegation is insufficient to bring the claim within the "arising

---

[77] *Resorts*, 372 F.3d at 167.

[78] D.I. 29 at 1; D.I. 30 at 2-4; *see also* Dec. 12, 2022 Hr'g Tr. at 12 ("[Lender Defendants'] view is that our first argument is that this is a 12(b)(6) motion to dismiss where they have failed to formulate a breach of contract claim. They failed to state the claim because if a Court order had been entered that essentially made it impossible for us to have breached and therefore impossible for them to state a claim."); Dec. 12, 2022 Hr'g Tr. at 14 ("[Agent Defendant does] think that there is subject matter jurisdiction here based on the Court's prior orders where the [C]ourt retained jurisdiction, and we can go through that in detail").

[79] *Id.*

[80] D.I. 30 at 3 (citing *In re FormTech Indus.*, 439 B.R. 352, 357 (Bankr. D. Del. 2010)).

in" or "arising under" jurisdiction. At the end of the day, the fundamental basis for the breach of contract claims is that the defendants allegedly failed to live up to their contractual promises. Such claims cannot fit within "arising in" or "arising under" jurisdiction.

Whatever the *reasons* for the alleged breaches, there is no question that the complaint states three counts for ordinary breach of contract.[81] The first count alleges a breach of § 12.10 of the credit agreement and § 7.1 of the security agreement – which, read together, allegedly require a majority of the lenders to instruct the agent before the agent may credit bid.[82] The second count alleges violations of §§ 12.02 and 12.10 of the credit agreement and § 7.1 of the security agreement, which allegedly prohibit any effort to enforce the security agreement except upon the instructions of a majority of the holders.[83] And the third count of the complaint alleges that the defendants effectively released the plaintiffs' collateral in violation of § 13.12 of the credit agreement.[84]

In contending that the claims are within the Court's subject-matter jurisdiction, defendants seek to recast the claims as ones that are *about* what happened in the bankruptcy case. That effort is unsuccessful. It is true that the events that gave rise to the alleged breaches had something to do with this Court's prior orders. But as further described below, the caselaw is clear that the particular

---

[81] *See generally* Complaint.

[82] Complaint ¶¶ 47-53.

[83] *Id.* ¶¶ 54-62.

[84] *Id.* ¶¶ 63-69.

factual circumstances in which the claim arises does not alter the basic nature of the claim. It is certainly the case that the complaint makes factual allegations about events that took place in the bankruptcy case. That, however, is insufficient to transform a complaint that alleges breaches of contract into one that is somehow *about* the bankruptcy case.

1. **The breach of contract claims cannot "arise under" the Bankruptcy Code.**

As the Third Circuit explained in *Essar Steel*, "[a] case 'arises under' [the Bankruptcy Code] when the cause of action is based on a right or remedy expressly provided by the Bankruptcy Code.[85] This head of jurisdiction is limited to claims for which the basis for the relief sought is *created by* the Bankruptcy Code itself.[86]

Defendants insist that the breach of contract claims in this action "arise under" the Bankruptcy Code because the preclusive effect of the Court's order denying the preliminary injunction bars this lawsuit.[87] That argument, however, is foreclosed by *Stoe v. Flaherty*.[88] There, the plaintiff's claim, an effort to collect unpaid wages from former officers of his prior employer, arose under the Pennsylvania Wage Payment and Collection Law.[89] The defendants in *Stoe* argued, like the defendants here, that

---

[85] *In re Essar Steel*, 47 F.4th at 197 (quoting *In re Weiand Auto. Indus.*, 612 B.R. 824, 854 (Bankr. D. Del. 2020)) (brackets in original; internal footnote omitted).

[86] 1 *Collier on Bankruptcy* ¶ 3.01[4][e][i] (Richard Levin & Henry J. Sommer eds., 16th ed. 2022).

[87] *See generally* D.I. 19, 22, 29, 30; Dec. 13, 2022 Hr'g Tr.

[88] 436 F.3d 209, 217 (3d Cir. 2006).

[89] *Stoe*, 436 F.3d at 217.

any defense to Stoe's claim implicated bankruptcy law.[90]  Indeed, prior Third Circuit precedent had held that officers were not liable under the Pennsylvania Wage Payment and Collection Law when federal bankruptcy law prohibited the employer from paying the wages that were otherwise due.[91]  But that was insufficient to make the case one that arose under the Bankruptcy Code.[92]  "The fact that federal bankruptcy law is implicated as a defense to Stoe's claim[] does not change the fact that Stoe's claim itself does not 'arise under' title 11."[93]

That principle is controlling here.  Though the defendants argue that the preclusive effect of this Court's prior orders could give rise to a defense to the plaintiffs' lawsuit, that assertion does not turn the claims into ones that arise under the Bankruptcy Code.

### 2. The breach of contract claims do *not* "arise in" a bankruptcy case.

When the New York district court transferred this case to the District of Delaware, it held that the claims at issue were "core" on the ground that they fell within the bankruptcy court's "arising in" jurisdiction.[94]  The district court explained that whether a case is a "core matter" was a significant factor in deciding whether to grant a motion to transfer the case to the district in which the underlying bankruptcy

---

[90] *Id.*

[91] *Id.*

[92] *Id.*

[93] *Id.*

[94] New York District Court, Aug. 17, 2022 Hr'g Tr. at 9-10.

case was pending.[95]  The district court noted that "the district in which the underlying bankruptcy case is pending is presumed to be the appropriate district for hearing and determination of a proceeding in bankruptcy,"[96] and that "when a proceeding is core, the public interest in centralizing [the] bankruptcy proceeding always outweighs the public and private interests in enforcing a forum selection clause."[97]

The district court went on to conclude because this Court's prior orders play a central role in the dispute, the case itself "arises in" the bankruptcy case.[98]  "Courts have held contract disputes to be core where, similar to the situation here ... the dispute that emerged in the bankruptcy proceedings would not exist absent those proceedings and is intertwined with them."[99]  As the district court put it, claims "that require a Court to interpret a bankruptcy court order are considered to arise in a bankruptcy proceeding and are considered to be core claims."[100]

While this Court has the utmost respect for the U.S. District Court for the Southern District of New York and has no reason to dispute that Court's construction of its own precedent and that of the Second Circuit, that court's conclusion cannot be squared with the law that is controlling in this Court.  The Third Circuit has been clear that  "arising-in" jurisdiction must be limited to claims that can *only* arise in a

---

[95] *Id.* at 8-10.

[96] *Id.* at 12.

[97] *Id.* at 13.

[98] *Id.* at 8-10.

[99] *Id.* at 10-11.

[100] *Id.* at 9 (citing *Deutsche Oel & Gas S.A. v. Energy Cap. Partners Mezzanine Opportunities Fund A, LP*, 2020 WL 5814233, at *9 (S.D.N.Y. Sept. 30, 2020)).

bankruptcy case.[101]  "Proceedings 'arising in' a case under [the Bankruptcy Code] include matters that, though not explicitly mentioned in the Code, would not exist outside of bankruptcy."[102]  "[C]laims that 'arise in' a bankruptcy case are claims that *by their nature*, not their particular factual circumstance, could only arise in the context of a bankruptcy case."[103]  As described above, the three causes of action in the complaint are for breach of contract.[104]  Such breach of contract claims can and do, of course, exist outside of bankruptcy.  The claims therefore do not "arise in" a bankruptcy case.

That conclusion is reinforced by the underlying rationale for the distinction between "core" and "non-core" claims.  A plurality of the Supreme Court held in *Northern Pipeline* that Article III of the Constitution did not permit non-Article III bankruptcy courts to enter final judgment on matters of "private right," such as ordinary prepetition contract claims.[105]  The plurality suggested, however, that bankruptcy courts could enter judgment on matters of public right, including (according to the plurality) matters that were integral to the restructuring of the relationship between a debtor and its creditors.[106]

---

[101] *In re Essar Steel*, 47 F.4th at 197.

[102] *Id.* at 197 (quoting *In re Weiand Auto. Indus.*, 612 B.R. 824, 854 (Bankr. D. Del. 2020)) (brackets in original; internal footnote omitted).

[103] *Stoe*, 436 F.3d at 218 (emphasis added).

[104] D.I. 20 at 3.

[105] *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 69-71 (1982).

[106] *Id.* at 71.

The 1984 amendments to the bankruptcy jurisdiction provisions were intended to take up the *Northern Pipeline* plurality on its distinction between "core" and "non-core" matters. Issues at the heart of the "restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power,"[107] are matters of "public right." Such matters may be heard and determined by a non-Article III bankruptcy court. "Non-core" matters are matters of "private right" that are otherwise "related to" the bankruptcy case.[108] The Supreme Court made clear in *Stern v. Marshall* that the three heads of jurisdiction in § 1334(b) track this distinction between "core" matters of public right and "non-core" matters of private right. Cases that "arise under" the Bankruptcy Code or "arise in" a bankruptcy case are matters of public right and are core; matters that are within the "related-to" jurisdiction are matters of private right and are non-core.[109]

The result of that dichotomy is that matters of "private right" must necessarily be non-core matters, and therefore cannot "arise in" a bankruptcy case. As *Northern Pipeline* explains, an ordinary claim for breach of contract is a paradigmatic matter of "private right" that cannot be a core matter.[110] The necessary consequence is

---

[107] *Id.*

[108] 28 U.S.C. § 1334(a)-(b) advisory committee's notes to 1984 amendment.

[109] *See Stern v. Marshall*, 564 U.S. 462, 476-477 (2011) (explaining that "core proceedings are those that arise in a bankruptcy case or under Title 11" whereas "related-to" matters must be non-core, since a core matter that "arise[s] neither under Title 11 nor in a Title 11 case" would be "a contradiction in terms").

[110] 458 U.S. at 71 (describing the "adjudication of state-created private rights, such as the right to recover contract damages" as something that is "obviously" not a matter of public right). *See also Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 42, 56 (1989) ("State-law causes of action for breach of contract or warranty are paradigmatic private rights.").

therefore that such a claim cannot be a "core matter" that fits within either the "arising in" or "arising under" jurisdiction.

Accordingly, the three breach of contract claims pled in the complaint cannot be matters that fit within the "arising in" jurisdiction under Third Circuit precedent. This Court thus lacks subject-matter jurisdiction over those claims and must dismiss the claims on that basis.

## II. The defendants are entitled to summary judgment on the "deemed" fourth count seeking a declaratory judgment.

While the Court lacks subject-matter jurisdiction over this lawsuit as it was pled there remains a commonsense point to the view expressed by the District Court for the Southern District of New York and the defendants.  The heart of the parties' dispute is over this Court's prior orders, so it only makes sense to have this Court resolve that question.  And even if the Court cannot adjudicate the claims for breach of contract, that does not mean it cannot otherwise entertain a claim seeking a declaration regarding the meaning of its prior orders.

The Court accordingly offered, if all of the parties were to consent to it, to treat the complaint as having a fourth count, pled in the alternative, for a declaratory judgment.  That declaration sought would be a determination that the Court's prior orders would not bar the claims for breach of contract pled in plaintiffs' complaint.[111] As noted above, that is in any event the question to which most of the briefing on the motions to dismiss was addressed.  The parties agreed to have the Court proceed on

---

[111] D.I. 26 at 10-11.

that basis.[112]  For the reasons described below, the Court concludes that this Court's prior orders do preclude the assertion of breach of contract claims based on the facts alleged in this complaint.

### A. With the consent of the parties, the Court may treat the complaint as including a fourth count, one seeking a declaratory judgment about the effect of the Court's prior rulings.

The defendants filed their motions to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief may be granted.[113]  There is no question that the plaintiffs could have, with leave of the Court, expressly amended their complaint, under Rule 15, to seek a declaratory judgment. Indeed, the Third Circuit has explained that "Rule 15(b)(2) allows for the amendment of a complaint to conform to the evidence offered at trial, as long as the parties consent either expressly or impliedly."[114]  Express consent can be given to the Court by interested parties verbally or in written form.[115]  Implied consent is found where the parties have notice that a claim has entered the case at trial, the claim is being tried, and opposing parties have the opportunity to respond.[116]  This case has not gone to trial.  Rule 15(b) is therefore not, by its terms, applicable.  The basic principle animating the rule, however, is that the formalities of the pleadings should not prevent a court from resolving an issue that the parties have presented.  Applying

---

[112] Dec. 13, 2022 Hr'g Tr. at 5.

[113] *See* New York D.I. 47, 48, 50, 51.

[114] *Addie v. Kjaer*, 737 F.3d 854, 867 (3d Cir. 2013) (citing *Douglas v. Owens*, 50 F.3d 1226, 1236 (3d Cir. 1995)).

[115] *Id.*

[116] *Id.*

this principle, this Court sees no reason why, under the unusual circumstances presented here and with the parties' express consent, the Court may not treat the complaint as having been implicitly amended to include a count for a declaratory judgment.

To resolve any potential uncertainty regarding the parties' consent, the Court set a status conference (at the plaintiffs' sound suggestion[117]) the day before the scheduled argument on the motion to dismiss to determine whether the parties' consented to proceeding on this basis. At that status conference, the Court made the following suggestion to the parties:

> What that proposal would be is that I think I could, with everyone's consent, essentially deem the existing complaint to include a fourth count which would be a count that would say that in the alternative, that if the court were to lack subject matter jurisdiction over the breach of contract claims, that the plaintiff would seek a declaration that nothing in the bankruptcy court's prior orders operate to preclude a court of competent jurisdiction from resolving the claims for breach of contract.

> And … that is a pure question of law, and one that … most of the existing briefing on the motion to dismiss is directed to. Again, with everyone's consent I think I could treat the existing briefing as essentially cross-motions for summary [judgment] on whether it was appropriate to grant that declaratory [judgment] or not. And then, I would consider that question on the merits and resolve it to the best of my ability…. If it turns out I conclude that I don't have subject matter jurisdiction, you would then get a resolution from me on as much as I could resolve as quickly as I could resolve it.[118]

The Court made clear that it would not proceed on this basis "in the absence of consent from everyone" and suggested that the parties consider the matter and "let

---

[117] *See* D.I. 31 at 4.

[118] Dec. 12, 2022 Hr'g Tr. at 5-6.

me know at the beginning of the hearing tomorrow" whether they would consent to proceeding on that basis.[119]

Counsel for the lender defendants said that she "will tell you now that we agree that that would be an approach that is acceptable to our clients and that we find acceptable."[120]  Counsel for the agent defendant agreed.[121]  "You could deem there to be a fourth cause of action as part of … the complaint, and that would be the declaratory judgment action … [T]his can go forward substantively before your Honor tomorrow."[122]

While counsel for the plaintiffs had proposed taking an additional month to permit the parties formally to amend the pleadings, counsel said that he would "think about what you've suggested and be prepared to discuss that tomorrow."[123]  At the outset of the hearing the following day, plaintiffs' counsel stated that they "have considered your proposal and are fully ready to agree to that.  I believe that defendants voiced their consent to that yesterday."[124]

The Court is mindful of the command of Federal Rule of Bankruptcy Procedure 1001 that the rules "be construed, administered and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every case and

---

[119] *Id.* at 6-7.

[120] *Id.* at 11.

[121] *Id.* at 13.

[122] *Id.*

[123] *Id.* at 11.

[124] Dec. 13, 2022 Hr'g Tr. at 5.

proceeding."[125]  In view of all parties' express consent and the dictate of the Rules, the Court is satisfied that it may proceed to address the merits of the "deemed" claim for a declaratory judgment, which it will treat as being presented on cross motions for summary judgment.

For the reasons described below, the Court finds that the claims *are* precluded by the Court's prior order.  The Court will accordingly deny the plaintiffs' motion for summary judgment and enter summary judgment in favor of defendants.

### B.    The breach of contract claims are barred by the preclusive effect of this Court's prior orders.

As an initial matter, there is no question that the Court has subject-matter jurisdiction over the declaratory judgment count, which follows from the precept that a court always has the jurisdiction to implement or enforce its prior orders.[126]

There is certainly a live and ripe dispute between the parties that warrants judicial resolution.[127] The fact that there is not a breach of contract action now pending in a court of competent jurisdiction does not stand as a bar to this Court's entering a declaration with respect to the preclusive effect of its prior judgment.  The point of a declaratory judgment action, after all, is to "allow potential defendants to resolve a dispute without waiting to be sued…and the mere fact that a declaratory

---

[125] Fed. R. Bankr. P. 1001.

[126] *Travelers*, 557 U.S. at 151.

[127] *See generally Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941); *Armstrong World Indus., Inc. v. Adams*, 961 F.2d 405, 411 (3d Cir. 1992).

judgment action is brought in anticipation of other suits does not require the dismissal of the declaratory judgment action by the federal court."[128]

There is a question, however, whether it is appropriate for the Court to enter a declaratory judgment when the motion that has formally been briefed is a motion to dismiss the complaint. The Court is satisfied, however, that issue preclusion is a pure question of law. The matter that needs to be decided is whether the issue that is at the core of the breach of contract action – whether the majority lenders instructed the agent to transfer the loans to the buyer – had been actually litigated in a prior proceeding in a way that precludes the plaintiffs from relitigating that issue.

The only materials that need to be considered to resolve that question are those available on the Court's docket, and that accordingly fall within the doctrine of judicial notice.[129] In addition, because the arguments the Court must consider in order to resolve the right to a declaratory judgment were all fully engaged by the parties in their very able briefing on the motions to dismiss, the Court is satisfied that proceeding in this fashion is appropriately respectful of all parties' procedural rights.

As far as the merits go, the fundamental question is whether the issue raised in the potential breach of contract claims has already been decided in a previous order

---

[128] 17 Charles Alan Wright & Arthur Miller, *Federal Practice & Procedure* § 2751 (3d ed. Apr. 2022 update).

[129] *See generally Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group, Ltd.*, 181 F.3d 410, 426-427 (3d Cir. 1999) (explaining consideration of prior judicial proceedings, on judicial notice, for purposes of preclusion).

29

of the Court in a way that is binding on the plaintiffs.  The doctrine of issue preclusion bars the relitigation of an issue that has been litigated.[130]  The standard formulation of issue preclusion, or collateral estoppel, is that "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim."[131]

The Third Circuit has construed this standard to contain four elements.[132] Collateral estoppel is appropriate where: "(1) the identical issue was decided in a prior adjudication; (2) there was a final judgment on the merits; (3) the party against whom the bar is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom the bar is asserted had a full and fair opportunity to litigate the issue in question."[133]  Here, the order entered by this Court denying the motion for a preliminary injunction satisfies each of these elements with respect to the "issue" whether the majority lenders had instructed the agent to credit bid the debt, a question of fact that is central to the plaintiffs' breach of contract claims.

---

[130] *Wallace v. United Parcel Service*, 387 Fed. App'x 127, 128 (3d Cir. 2010).  The Court notes that at argument on the motion, the Court erroneously suggested that the principal basis for asserting preclusion would be the doctrine of claim preclusion, or *res judiciata*.  *See* Dec. 13, 2022 Hr'g Tr. at 88.  While the parties' briefs do address the doctrine of claim preclusion, for the reasons described below this dispute is most appropriately resolved as a matter of issue preclusion.  The Court accordingly has no occasion to reach the questions of claim preclusion presented by the parties.

[131] *Restatement (Second) of Judgments* § 27 (1982) (Oct. 2022 update); *see also Doe v. Hesketh*, 828 F.3d 159, 171 (3d Cir. 2016).

[132] *Doe*, 828 F.3d at 171.

[133] *Id.*

1.    **The question whether the majority lenders had instructed the agent to credit bid the debt was decided in a prior adjudication.**

The heart of the contract claims that the plaintiffs seek to pursue is the factual question whether the majority lenders had instructed the agent to transfer loans to the buyer so that the buyer would be able to credit bid them.  The "deemed" fourth count in this action seeks a declaration that the majority lenders had *not* so instructed the agent.

Defendants assert that this identical issue was litigated when the lender defendants sought a preliminary injunction in the main bankruptcy case.[134]  The plaintiffs argue that the Court's order denying the preliminary injunction did not address the question whether the lender defendants had instructed the agent to transfer the right to credit bid, as evidenced by the fact that the word "instruction" does not appear in the Court's order.[135]

Whether or not the Court used the word "instruction," the unmistakable import of the Court's decision denying the preliminary injunction was that whatever needed to happen to permit the sale to close had already happened, including the transfer of the right to credit bid.  There is no question that the plaintiffs' position that no instruction had been given was placed squarely in front of the Court.  In their motion for a preliminary injunction, the ad hoc term lender group block quoted § 7.1 of the security agreement, which provides that the agreement "***may be enforced only by***

---

[134] D.I. 19 at 3; Dec. 13, 2022 Hr'g Tr. at 38, 47.

[135] D.I. 20 at 3, 6; D.I. 33 at 7-8; D.I. 34 at 2.

*the Collateral Agent acting upon the instructions of the Required Secured Creditors.*"[136]

Counsel for the ad hoc term lender group made this same point at the argument on the preliminary injunction.[137] "[T]he ad hoc term lender group, as the required lenders and required secured creditors and *the agent acting at the direction of the ad hoc term lender group* [] are the only part[ies] that can take actions or exercise powers like credit bidding."[138]

The Court squarely and unequivocally rejected that argument.  In denying the preliminary injunction, the Court observed that the "credit bid has been contemplated from day one."[139]  The Court noted the ad hoc term lender group's position that "the term lenders have never transferred to the buyer the right to make that credit bid," but rejected it.[140]  "I think the sale order makes it clear that the preliminaries, i.e. the transfer of the right to credit bid, have already occurred and we're not awaiting that happening."[141]  Underscoring that point, the Court went on to say that while "I think the documents made it clear that the contribution already [occurred] – and to the extent that it didn't already occur pursuant to some sort of documents being exchanged among the parties I deemed it as a matter of law and to the extent I have

---

[136] Main Case D.I. 710 at 8 (emphasis in original).

[137] Nov. 30, 2020 Hr'g Tr. at 15.

[138] *Id.* at 14.

[139] *Id.* at 26.

[140] *Id.*

[141] *Id.* at 27.

to exercise equitable power here it did occur…. So, I am finding that the buyer has the authority to credit bid."[142]   The Court's order denying the motion makes the same point, stating that the "Prepetition Agent, on behalf of the Prepetition Lenders, has transferred the right to credit bid … to the Buyer."[143]

The central question now before this Court is how to construe this ruling. The language quoted above is perhaps amenable to two plausible constructions. On the one hand, it could be read, as defendants suggest, as a ruling that not only had the right to credit bid been transferred to the buyer, but also that any of the necessary steps to effect that transfer, including the majority of the lenders giving the necessary instructions to the agent, had also occurred. Alternatively, it could be read as the plaintiffs argue, as limited to a finding that the right to credit bid had been transferred to the buyer but failing to address whether the necessary steps needed to effectuate that transfer (such as the majority lenders' giving of the instruction to the agent) had occurred. On this reading, if that instruction had not in fact been given, then the plaintiffs would retain their rights to enforce the terms of the credit agreement and security agreement against the defendants.

The Third Circuit held in *In re Shenango Group* that a bankruptcy court is afforded some measure of discretion in construing ambiguous provisions of its own orders.[144]   Because the Court finds that the order in question is subject to more than

---

[142] *Id.*

[143] Main Case D.I. 721 at 2.

[144] 501 F.3d 338, 345-346 (3d Cir. 2007).

one plausible construction, this case presents precisely the circumstance contemplated by *Shenango* in which a bankruptcy court is left to exercise that discretion.[145] It is true that this bankruptcy case was reassigned to the undersigned bankruptcy judge after Judge Sontchi's retirement so that (unlike the paradigmatic case) this is not a circumstance in which the author of the prior order is construing an order that he or she previously entered. This Court nevertheless has little doubt that the first of the two suggested constructions of this Court's order is the better one.

That is true for several reasons. *First*, read in context, this Court believes that the Court's reference to the "preliminaries" having occurred is best understood as a reference to the required majority of the lenders instructing the agent under the terms of the applicable agreements.[146] In seeking a preliminary injunction, the lenders emphasized, after all, that the buyer could only obtain the right to credit bid after an instruction was given to the agent, and contended that such an instruction had not been given.[147] The Court rejected that argument, construing the sale order as providing that the instruction had already been given.[148] The Court believes that the reference to the "preliminaries" is not limited to "the transfer of the right to credit bid" but is better understood also to include all other steps that needed to be taken to make that transfer effective, such as the required lenders giving appropriate instruction to the agent.

---

[145] *Id.*

[146] Nov. 30, 2020 Hr'g Tr. at 27.

[147] Main Case D.I. 710 at 8; Nov. 30, 2020 Hr'g Tr. at 15.

[148] Nov. 30, 2020 Hr'g Tr. at 27.

*Second*, the Court's reference to the invocation of "equitable power" is consistent with this position.[149]  The Supreme Court's decision in *Pepper v. Litton*, in emphasizing the equitable powers of the bankruptcy court, described the authority as one to ensure "that substance will not give way to form, that technical considerations will not prevent substantial justice from being done."[150]  The agent defendant similarly pointed, at argument on the motions, to the maxim that "equity regards as done, that which ought to be done."[151]

The Court's reliance on its equitable powers thus indicates that the Court's intent was broadly to sweep aside "technical considerations," such as the issuance of a formal document from the majority lenders to the agent bearing the caption "instruction."  The Court is best understood as saying that at the time the sale order was entered, the agent would reasonably know and understand that that majority lenders intended to give the buyer the authority to credit bid, and that under the circumstances there was no need to honor the formalities of the issuance of an "instruction" per se.  Rather, as the maxim goes, the Court would regard as being given those instructions that ought to have been given.

*Finally*, just as a matter of common sense, it would ignore reality to adopt a reading of the Court's order that leave the majority lenders and the agent in such a precarious position.  To be clear, when the Court found that the right to credit bid

---

[149] *Id.*

[150] 308 U.S. 295, 305 (1939).

[151] Dec. 13, 2022 Hr'g Tr. at 48; *see also* 27 Am. Jur. 2d Equity § 10.

35

had been transferred to the buyer, the Court was obviously aware of the arguments that as a formal legal matter, the parties had not dotted all of the i's and crossed all of the t's contemplated by the loan documentation.  It makes far more sense to read the Court's decision as sweeping away all of the formalities and treating the instruction as having been given than – as the plaintiffs would read it – to leave the defendants exposed for having transferred the right to credit bid after ignoring the formal prerequisites.

The Court appreciates that all of this has some element of fiction to it.  No one has pointed to any actual record evidence suggesting that the majority lenders, as a matter of historical fact, issued a letter of instruction to the agent.  And the conclusion that this issue was in fact resolved by the Court's sale order is, from the face of the order itself, far from obvious.  But that is the thing about giving collateral estoppel effect to a court's resolution of a factual issue.  If that resolution is wrong, it is incumbent on the party to that dispute to litigate to final judgment and then appeal.  Otherwise, subject to the satisfaction of the remaining elements of preclusion (discussed herein), the resolution is binding.  So while the Court appreciates plaintiffs' frustration with the preliminary injunction "findings" that may not be fully supportable by the record, it is now too late to complain about that fact.  One cannot bring a collateral attack on the Court's prior ruling in the guise of a breach of contract action.  That is the aspect of this lawsuit that seeks to fit a square peg into a round hole.

### 2. The denial of the motion for a preliminary injunction was a final judgment for purposes of the issue preclusion doctrine.

The plaintiffs argue that the Court never entered final judgment because "the Emergency Motion was not the type of prior proceeding susceptible to being given preclusive effect in later litigation.  The Lender Defendants styled the Emergency Motion as one seeking only an order temporarily enjoining the closing of the impending sale."[152]

The Third Circuit has explained, however, that "finality for purposes of issue preclusion is a more pliant concept than it would be in other contexts."[153]  That determination is in line with the approach taken in the Restatement (Second) of Judgments.[154]  While § 27 applies preclusive effect only to "a valid and final judgment," § 13 importantly modifies what is meant by a "final judgment."[155]  "[F]or purposes of issue preclusion (as distinguished from merger and bar) 'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect."[156]  Comment g to § 13 goes on to

---

[152] D.I. 33 at 4.

[153] *Henglein v. Colt Indus. Operating Corp.*, 260 F.3d 201, 209-210 (3d Cir. 2001) (internal citations and quotations omitted); *see also In re Brown*, 951 F.2d 564, 569 (3d Cir. 1991) (unlike "claim preclusion, the effectiveness of issue preclusion, sometimes called collateral estoppel, does not require the entry of a judgment, final in the sense of being appealable.").

[154] *Restatement (Second) of Judgments* § 27.

[155] *Id.* § 13.

[156] *Id.*

explain that preclusive effect should not be given to rulings that were "avowedly tentative."[157]

Preclusive effect is appropriate, however, when "the parties were fully heard" and "the court supported its decision with a reasoned opinion."[158]  Following this principle, the Third Circuit recently gave preclusive effect to an order granting a Rule 2004 examination on the ground that "there was nothing 'avowedly tentative' about the Rule 2004 Order."[159]  The same is true here.  There was nothing at all tentative about the Court's ruling.  And while the denial of a preliminary injunction is not a final judgment in the strictest sense, the Court has little question that the order was, in the language of the Restatement, sufficiently firm to be accorded preclusive effect.

### 3. The plaintiffs were both parties to the motion for a preliminary injunction and in privity with the defendants.

The third element of issue prelusion asks if "the party against whom the bar is asserted was a party or in privity with a party to the prior adjudication."[160]  The basic premise of this element is to ensure that a party not be collaterally estopped from asserting a claim unless the party had itself (or was in privity with a party that had) litigated and lost the issue earlier.[161]  The fact that Party A may have litigated and lost an issue should not give rise (absent privity) to collateral estoppel running against Party B.  That element is satisfied.

---

[157] *Id.* § 13 cmt. g.

[158] *Id.*

[159] *In re Bestwall*, 47 F.4th 233, 243-244 (3d Cir. 2022).

[160] *Doe*, 828 F.3d at 171.

[161] *Restatement (Second) of Judgments* § 27.

The plaintiffs were at the hearing on the motion for a preliminary injunction.[162] Alternatively, under the terms of the credit agreement, a majority of the lenders could and did assert the rights of (and therefore bind) all holders in seeking the preliminary injunction.[163]   Otherwise put, while a credit agreement permits minority holders to sit back and have the majority take action to enforce the terms of the loan, they are nevertheless bound by that outcome in the same way that they would have been had they been parties themselves.   Either way, this element of collateral estoppel is satisfied.

> ### 4. Plaintiffs had a full and fair opportunity, at the preliminary injunction hearing, to litigate the question whether a majority of the lenders had appropriately instructed the agent.

The fourth element of issue preclusion requires the court to consider whether "the party against whom the bar is asserted had a full and fair opportunity to litigate the issue in question."[164]   As a party in the bankruptcy case, the plaintiffs were fully entitled to appear and be heard in connection with the motion for a preliminary injunction.   There is no suggestion that the plaintiffs sought and were denied an

---

[162] Dec. 13, 2022 Hr'g Tr. at 87.

[163] *See* D.I. 21-4 (Credit Agreement) § 12.10(a) ("Each Lender hereby agrees… that … any action taken by the Required Lenders … in accordance with the provisions of this Agreement … shall be authorized and binding upon all of the Lenders.").

[164] *Doe*, 828 F.3d at 171; *Restatement (Second) of Judgments* § 29 ("A party precluded from relitigating an issue with an opposing party, in accordance with §§ 27 and 28, is also precluded from doing so with another person unless the fact that he lacked full and fair opportunity to litigate the issue in the first action or other circumstances justify affording him an opportunity to relitigate the issue.").

opportunity to participate in any respect. Indeed, the plaintiffs make no argument to this effect. This element is thus satisfied.

## Conclusion

For the reasons described above, the Court will dismiss the breach of contract claims for want of subject-matter jurisdiction. The Court will deny summary judgment for the plaintiffs and will grant summary judgment in favor of the defendants on the deemed count seeking a declaratory judgment. The Court will enter a separate judgment reflecting these rulings.

Dated: January 6, 2023

_____
CRAIG T. GOLDBLATT
UNITED STATES BANKRUPTCY JUDGE

## <u>CERTIFICATE OF SERVICE</u>

I, Gregory W. Werkheiser, do hereby certify that I am over the age of 18, and that on January 19, 2023, I caused a copy of the foregoing *Notice of Appeal* to be served upon: (a) all parties of record via CM/ECF noticing in the above-captioned adversary proceeding; (b) in accordance with Del. Bankr. L.R. 8003-1(a) and the Chambers Procedures for the Hon. Craig T. Goldblatt, Nicki Barksdale, Courtroom Deputy, by electronic mail at Nickita_Barksdale@deb.uscourts.gov; and (c) the persons listed below by electronic mail at the email address listed for each recipient.

Laura Davis Jones
Email: ljones@pszjlaw.com

James E. O'Neill
Email:  joneill@pszjlaw.com

Mary Beth Maloney
Email: mmaloney@gibsondunn.com

David Salant
Email:  dsalant@gibsondunn.com

Ricardo Palacio
Email: RPalacio@ashbygeddes.com

Madlyn Gleich Primoff
Email: madlyn.primoff@freshfields.com

Peter Kim
Email:  peter.kim@freshfields.com


*/s/  Gregory W. Werkheiser*
Gregory W. Werkheiser (DE #3553)